IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:25-CT-3011-BO

FILED

DEC - 1 2025

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY_____DEP CLK

TERRANCE JOHNSON, II, pro se )
)
Plaintiff, )
)
) **PLAINTIFF'S STATEMENT OF**
) **UNDISPUTED MATERIAL FACTS**
v. ) **IN SUPPORT OF HIS MOTION**
) **MOTION SUMMARY JUDGEMENT**
)
NICOLAS ESTES, et al. )
)
Defendants, )
)
)
)

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. First Amendment Retaliation

1.    The blue overhead lights illuminated on the marked patrol vehicle being operated
by Corporal Guy Caine, which was approximately a block away from the intersection
of Chestnut Street and West Third Street. (App. 17, 00.00.14-00:00:16).

2.    Plaintiff was *not* at a block party or near a large crowd of people, during the time
of Plaintiff's encounter with Defendant Estes. (App. 8; App. 9; App. 17,
00:00:16-00:00:29; App. 19, 00:02:36-00:03:02)

3.    After the blue lights illuminated on the patrol vehicle being operated by Corporal
Caine, the patrol vehicle proceeded from the location where the blue lights first
illuminated— and traveled on West Third Street, in the direction of Chestnut Street;
at which point the patrol vehicle was traveling the *opposite direction* of the one way
street's normal flow—with *no* audible sirens. (App. 17, 00:00:17-00:00:35).

4. Prior to Defendant Estes' bodycam being activated, Plaintiff uttered words to the effect of, "what the fuck is this officer's problem?"; Plaintiff also called something "bullshit" and called Corporal Caine's actions "stupid." (App. 17, 00:00:17-00:00:30)

5. As Defendant Estes' bodycam activated, Plaintiff sternly asserted in response to Defendant Estes, "nahh—nahh—this nigga just rode down the wr—"; at which point Plaintiff sharply asks—"aye bro what the fuck is you doing," as Corporal Caine's patrol vehicle turned right on Chestnut Street—and proceeded past Plaintiff and Defendant Estes. (App. 17, 00:00:30-00:00:34).

6. During this encounter, Defendant Estes interjected—"he's got blue lights on," and Plaintiff retorted—"don't give a fuck bro—you don't roll down—"; at which point Estes approached Plaintiff commanding, "You need to calm down before you go to Halifax cussing in the street. Imma go'on ahead and tell you—you're gonna have to quit cussing and you need to curr your *ass* down the street." (App. 17, 00:00:34-00:00:45).

7. While still facing, Defendant Estes, who was talking at the time; Plaintiff sharply asserted, "nahh—nahh—aye listen—listen bruh—aye listen bruh—aye listen—aye listen, aye listen—aye listen—aye listen—aye listen—listen bruh—Imma say what I want to say"; to which Defendant Estes immediately responded, "No sir you can't cuss in the street like that." (App. 00:00:39-00:00:48 ).

8. Not being detained or commanded to stop up to this point, Plaintiff disengaged and began *walking away* from Defendant Estes, again *sharply* asserting—while looking back at Defendant Estes, "Yes Imma say what the hell I want to say bruh." (App. 00:00:46-00:00:49).

## B. Unlawful Arrest, Excessive Force and Failure to Intervene

9. Defendant Estes replied "okay, alright," and quickly approached Plaintiff from the rear, in an attempt to seize Plaintiff; at which time Plaintiff did *not* attempt to run from Defendant Estes. (App. 17, 00:00:48-00:00:49; App. 18, 00:00:27-00:00:30)

10. After noticing Defendant Estes advancing from Plaintiff's rear, Plaintiff commanded Defendant Estes, "Get out my face bruh," while still *walking* away. (App. 17, 00:00:49-00:00:50; App. 18, 00:00:27-00:00:30)

11. Defendant Estes proceeded to make physical contact by grabbing Plaintiff's arm and pulling Plaintiff forcefully, without issuing a verbal command, thereby terminating Plaintiff's freedom of movement; at which point Plaintiff shouted "get out my face" two more times, before pulling away from Defendant Estes' grip—causing Plaintiff to stumble backwards and fall onto the ground while yelling "get the fuck off me"—before immediately standing back up. (App. 17 00:00:50-00:00:57; App. 18, 00.00.30-00.00.36)

12. After Plaintiff stood back up, Defendant Estes tackled Plaintiff back to the ground, causing Defendant Estes' bodycam to fall onto the ground, where the bodycam continued recording. (App. 17, 00:00:58-00:01:03; App. 18, 00:00:37-00:00:42)

13. As Plaintiff was being tackled, Plaintiff cried out at Defendant Estes, "What are you doing? Get the fuck off me. Get off me bruh—what are you doing?" Defendant Estes provided no reply. (App. 17, 00:00:56-00:01:02; App. 18, 00:00:37-00:00:4).

14. Defendant Cash, while running to assist Defendant Estes, directed Defendant Estes to "go'n handcuff him." (App. 18, 00:00:37-00:00:38)

15. As Defendant Cash got closer to Plaintiff and Defendant Estes, Plaintiff shouted to Defendant Cash, "what is he doing?" Defendant Cash then commanded Plaintiff to "put your hands behind your back"; to which Plaintiff complied, was subsequently handcuffed, and placed into custody. (App. 18, 00:00:38-00:00:55)

16. While following Defendant Cash's order to "put him in a cage car," Defendant Estes asserted to Plaintiff, "I told you quit cussing in the street"; to which Plaintiff exclaimed in response, "I didn't—I said hell man! I said hell—what did I say? Did I say hell or not?" (App. 17, 00:01:20-00:01:27; App. 18, 00.00.54-00.01.06)

C. **Failure to Intervene Under Bystander Liability**

17. While Defendant Estes was escorting Plaintiff to Corporal Caine's patrol vehicle, the vehicle's headlights and blue lights were illuminated, and the vehicle's engine could be heard. Corporal Caine opened the driver side door and did something inside the vehicle. (App. 18, 00:01:15-00:02:12)

18. After Defendant Estes placed Plaintiff inside the patrol vehicle and the deputies walked away from the vehicle, the vehicle's lights were no longer illuminated and the vehicle's engine could no longer be heard. (App. 18, 00:02:12-00:02:32)

19. Plaintiff cried out to the deputies, "it's hot in this truck sir. It's hard for me to breathe," and "it's hard for me to breathe sir—it's hot in this truck" within earshot of multiple deputies, including Defendant Cash; to which an unnamed deputy looked in Plaintiff's direction and verbalized something, but neither took no action to confirm or dispel Plaintiff's alleged distress. (App. 18, 00:02:12-00:03:08)

20. While Defendant Estes' bodycam was on the ground recording, Defendant Estes is heard saying to Plaintiff's wife, "what's going on is, I tried to talk to him and he's

cussing in the street. You can't cuss on a North Carolina highway like that." (App. 17, 00:03:17-00:03:25)

21. After ignoring Plaintiff's cries of having trouble breathing, Defendant Cash walked over to Defendant Estes and joined in the conversation with Plaintiff's wife. (App. 18, 00:03:08-00:03:27).

22. After joining Defendant Estes for a brief moment, Defendant Cash told Plaintiff's wife, "well now he's going to jail now for cussing at the officer and jerking away from him," and "maybe when an officer next time to go on home and be quiet, he won't stand in the middle of the road, cuss at him and scream at him—Right? At some point in time, people have to take the blame for their actions." (App. 18; 00:03:28-00:04:28)

D. **Malicious Prosecution**

23. After being told that Deputies could "clear", Defendant Cash verbally characterized the incident as a "fight" multiple times, stating, "so we come over here and get in a fight for them," and "so we come over here and get in a 10-40—because we told this guy he had to go home, and now they're gonna let them stay." (App. 18, 00:05:51-00:06:24).

24. Referring to Plaintiff, Defendant Cash stated to an unnamed Deputy, "Nick told him to go home—he starts cussing at Nick out in the middle of the road—Nick goes to grab him." (App. 18, 00:06:46-00:06:50).

25. Defendant Estes represented to Magistrate Christopher Kidd, that Plaintiff, "unlawfully and willfully did cause a disturbance at corner of Chestnut and HWY 158, by making utterances, making gestures, making displays, using abusive

language, intended and plainly likely to provoke violent retaliation and thereby cause a breach of the peace." Defendant Estes alleged that Plaintiff uttered the phrases "what the fuck is this officer's problem" and "this is bullshit," while "in front large group of people," and "snatching away and refusing to be handcuffed." Plaintiff was thereby charged with Disorderly Conduct under N.C.G.S § 14-288.4 and Resisting a Public Officer under § 14-223. (App. 1)

26. Defendant Estes authored an incident report, that acknowledges Plaintiff being upset with Corporal Caine's driving, but alleges that, "all this was said in front of a large crowd of people at a block party while standing in the middle of W. Third St." (App. 7).

27. The block party and crowd of people referenced in Defendant Estes' incident report, were located at 407 Chestnut Street, which is approximately 500 feet away from West Third Street, where Plaintiff encountered Defendant Estes. (App. 8; App. 9).

28. Defendant Cash, who was present and witnessed Plaintiff's arrest, approved the incident report authored by Defendant Estes. (App. 7).

29. As a direct result of the force used by Defendant Estes during the arrest at issue, Plaintiff sought medical treatment at ECU Health and was diagnosed with Myalgia (muscle pain and swelling). (App. 2).

E. **Monell Liability against Defendant Davis for Failure to Train**

30. On August 14, 2024, Plaintiff filed a formal complaint, making allegations to the effect of First and Fourth Amendment violations by the deputies that affected Plaintiff's arrest on July 7, 2024. (App. 3).

31. Per Halifax County Sheriff's Office policy, complaints alleging "corruption, brutality, misuse of force, breach of civil rights, officer involved shooting, and criminal misconduct," are forwarded directly to the Sheriff. (App. 14 p. 4 ¶ 2).

32. On November 4, 2024, Plaintiff delivered a letter to the office of Defendant Davis, placing him on notice that the formal complaint Plaintiff filed, had not been investigated and requesting disclosure of the bodycam footage from Plaintiff's arrest. (App. 4; App. 5).

33. Per Sheriff's Office policy, a complainant is to be "notified through written verification within 5 days of completion" of an investigation, and provided with an update on the investigation's status every 45 days. (App. 14 p. 4 ¶ 3).

34. A Dismissal Order was authored by prosecutor Roger Echols, which states that the case was dismissed without leave and provides the reasons for the dismissal, which include Defendant Estes, "failed to appear, officer in training failed to notify office of training, continued to this date on State's motion because officer unavailable on previous date."(App. 6).

35. On July 9, 2025, Defendant Cash held the rank of Lieutenant but was promoted to Captain as late as February 16, 2025. (App. 11; App. 12; App. 15 p. 6 ¶ 4).

36. On April 24, 2024 Defendant Estes held the rank of Deputy, but held the rank of Corporal on July 9, 2024. Defendant Estes was promoted to Sargeant as late as April 27, 2025. (App. 10; App. 11; App.13; App. 15 p. 6 ¶ 4).

37. Defendant Cash has had no verifiable training since April 26, 2024 (App. 16 P. 8).

Respectfully submitted this 1st day of December, 2025

Terrance Johnson II
400 West 3rd Street
Apt 6
Weldon, North Carolina 27890
Telephone: (252) 529-5022
Email:terrancejohnson2008@yahoo.com
Plaintiff, pro se

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the forgoing **STATEMENT OF MATERIAL FACTS** has been sent to the following Attorney for the Defendants via United States Postal Service on this 1 day of December, 2025.

Erin H. Epley
One West Fourth Street
Winston-Salem, North Carolina 27101
Telephone: (336) 747-6624

Terrance Johnson II
400 West 3rd Street
Apt 6
Weldon, North Carolina 27890
Email:TerranceJohnson2008@yahoo.com
Telephone: (252)529-5022
Plaintiff, pro se