IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:25-CT-03011-BO

| | |
|---|---|
| TERRANCE JOHNSON, II, | ) |
| Plaintiff, | ) |
| v. | ) **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| NICOLAS ESTES, ANTHONY CASH, and TYREE DAVIS, | ) |
| Defendants. | ) |

NOW COME Defendants Corporal Nicolas Estes, Lieutenant Anthony Cash, and Halifax County Sheriff Tyree Davis, by and through undersigned counsel, and submit this Memorandum of Law in support of their Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## INTRODUCTION

The record, including the Magistrate's Order, Corporal Estes' contemporaneous incident report, CAD/radio extracts documenting crowd conditions and impeded EMS access, Plaintiff's medical "After Visit Summary," and Plaintiff's own statement of facts and briefing, establishes that there is no genuine dispute of material fact, and that Defendants are entitled to judgment as a matter of law on all remaining claims. The undisputed record demonstrates the existence of probable cause for disorderly conduct and resisting/delaying/obstructing under North Carolina law. The force Corporal Estes used during the arrest was objectively reasonable. There is no viable failure-to-intervene or deliberate indifference theory, and no malicious prosecution liability because legal process issued based on probable cause. Plaintiff has not stated a claim under *Monell*

*v. Department of Social Services*, 436 U.S. 658 (1978), or *City of Canton v. Harris*, 489 U.S. 378 (1989). In all events, qualified immunity independently bars the individual-capacity claims. Summary judgment should be granted, and Plaintiff's cross-motion should be denied.

## PROCEDURAL HISTORY

Plaintiff filed his Complaint on January 13, 2025, asserting claims under 42 U.S.C. § 1983 arising from a July 7, 2024, arrest in Weldon, Halifax County. (Doc. 1). On initial review, the Court dismissed multiple defendants and claims, allowing this action to proceed only against Corporal Estes, Lieutenant Cash, and Sheriff Davis on limited theories. (Doc. 6).[1] Defendants answered on June 2, 2025, denying liability and asserting qualified immunity among other defenses. (Doc. 18). Plaintiff later filed a motion for summary judgment, a memorandum of law, a statement of purportedly undisputed facts, and an appendix of exhibits. (Docs. 38, 40, 41, 41-1).

The summary judgment record includes Plaintiff's filings: the July 7, 2024, Magistrate's Order issuing process for disorderly conduct and for resisting, delaying, or obstructing a public officer (Doc. 41-1, pp. 4-5); the incident/investigation report authored by Corporal Estes and approved by Lieutenant Cash describing a late-night, street-side encounter, loud profane utterances, and Plaintiff's physical pulling away when Corporal Estes attempted to detain him (Doc. 41-1, p. 24); CAD/radio extracts documenting a large gathering, blocked streets, and impeded EMS access in the immediate time frame and area (Doc. 41-1, pp. 20-22); the "After Visit Summary" reflecting generalized muscle soreness (Doc. 41-1, pp. 6-7); discovery responses referencing Defendants' reliance on BWC to describe events (Doc. 41-1, pp. 36-47); and Plaintiff's

---

[1] Plaintiff voluntarily dismissed Defendant Roy Rooks on April 23, 2025. (Doc. 10).

statements purportedly quoting Lieutenant Cash's on-scene remarks and contesting the proximity of a larger crowd at 407 Chestnut Street (Doc. 40; Doc. 41; Doc. 41-1, pp. 25-26).

## STATEMENT OF THE FACTS

Corporal Estes' initial contact with Plaintiff and the arrest were captured on BWC footage.[2] The encounter occurred shortly after midnight on July 7, 2024, near the intersection of West Third and Chestnut Streets in Weldon, as law enforcement responded to crowd conditions and to impeded EMS access documented over dispatch/CAD (Estes Decl. ¶ 2). Plaintiff acknowledges that he loudly used profanity in the street in reaction to police presence and driving, that Corporal Estes directed him to calm down and stop yelling profanities, and that as Corporal Estes moved to take control, Plaintiff pulled his arm away, leading to a brief takedown and handcuffing (Doc. 40, pp. 1-6; Doc. 41, pp. 1-2; Doc. 41-1, p. 8); *see also* (Estes Decl. ¶ 4). Lieutenant Cash did not observe any strikes, kicks, baton use, taser deployment, or other weapon use. (Cash Decl. ¶ 3). The force used was limited to a takedown and handcuffing to gain control after Mr. Johnson physically pulled away. *Id.*

The Magistrate issued process for disorderly conduct under N.C. Gen. Stat. § 14-288.4 and resisting/delaying/obstructing under N.C. Gen. Stat. § 14-223. (Doc. 41-1, pp. 4-5). Plaintiff's medical record two days later documents generalized muscle soreness, without more. (Doc. 41-1, pp. 6-7). The criminal charges were later dismissed on November 13, 2024, when Corporal Estes, then in training, was unable to appear on a rescheduled court date. (Doc. 41-1, pp. 12-13). Defendants' discovery responses identify BWC as the principal evidentiary account for their version of events. (Doc. 41-1, pp. 36-47).

---

[2] In support of their Motion for Summary Judgment, Defendants rely upon the BWC footage listed in the Appendix to the Local Rule 56.1 Statement of Material Facts as Exhibits 3 and 4.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The movant may meet its burden by showing an absence of evidence to support the nonmovant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A dispute is "genuine" only if a reasonable jury could return a verdict for the nonmovant; "material" facts are those that might affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court draws reasonable inferences for the nonmovant but does not credit mere conclusory assertions or speculation. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## ARGUMENT

I. **The undisputed facts establish probable cause for the arrest under N.C. Gen. Stat. §§ 14-288.4 and 14-223.**

Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe an offense has been committed. *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992). The record reflects late-night, street-side loud profanity during an active police response to crowd conditions and EMS access issues; a directive to calm down; and immediate physical pulling away when Corporal Estes attempted to secure Plaintiff. North Carolina's disorderly conduct statute prohibits intentionally causing a public disturbance by utterances or abusive language intended and plainly likely to provoke immediate violent retaliation. *See* N.C. Gen. Stat. § 14-288.4. The resisting/delaying/obstructing statute prohibits willfully resisting, delaying, or obstructing an officer discharging official duties. *See* N.C. Gen.

Stat. § 14-223. Although the First Amendment protects profanity and criticism of police in many contexts, it does not immunize "fighting words," true threats, or conduct plainly likely to provoke immediate violence. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942). The Fourth Circuit emphasizes context, including time, place, volume, gestures, crowd dynamics, and officer-safety considerations. *See United States v. Bartow*, 997 F.3d 203, 207-208 (4th Cir. 2021).

Plaintiff's argument that his words were protected as a matter of law does not defeat probable cause. The CAD/radio extracts contemporaneously estimated 200 people in the area, blocked streets, and active EMS routing issues. (Doc. 41-1, pp. 20-22). Plaintiff's own account confirms loud profanity in the street shortly after midnight and noncompliance with a directive to calm down, followed by physical resistance when Corporal Estes attempted to restrain him. (Doc. 40; Doc. 41). Even if the Court were to conclude on this record that a disorderly conduct conviction would be barred on First Amendment grounds, the undisputed pulling away from the officer during a lawful public-order response independently provided probable cause for a violation of section 14-223 of the North Carolina General Statutes. *See State v. Humphreys*, 853 S.E.2d 789, 796-97 (2020) (discussing "willful" under section 14-223). This objective basis for arrest defeats the false arrest and First Amendment retaliation theories and, at a minimum, entitles Corporal Estes and Lieutenant Cash to qualified immunity in their individual capacities.

Plaintiff's contention that the incident report overstated crowd proximity does not create a genuine dispute of material fact. The material, undisputed core facts remain: loud profanity in the street during an active police response, a directive to calm down, and physical pulling away upon an attempted detention. Probable cause exists on those facts and the Defendants are entitled to summary judgment.

**II. The brief takedown and handcuffing were objectively reasonable under the Fourth Amendment.**

Excessive force claims are evaluated under the Fourth Amendment's objective reasonableness standard, considering the severity of the crime, the immediate threat posed, and active resistance or flight. *Graham v. Connor*, 490 U.S. 380, 396-397. The undisputed record, including the BWC footage, shows that after Plaintiff pulled his arm away and moved as if to flee, Corporal Estes executed a takedown and handcuffed Plaintiff within seconds. There is no evidence of strikes, weapons, or prolonged force. Plaintiff's medical record reflects myalgia (*i.e.*, generalized muscle soreness). Under the circumstances of late-night public-order policing with immediate resistance in response to verbal commands, a brief takedown to secure control is objectively reasonable.

Plaintiff's complaint that he briefly experienced heat or difficulty breathing in a patrol vehicle does not transform the minimal force used into a constitutional violation. There is no objective evidence of a serious medical need or prolonged exposure to heat. When Plaintiff sought medical treatment two days after the arrest, he did not complain of ailments related to heat exposure or difficulty breathing. On this record, summary judgment is appropriate because the force used was objectively reasonable.

**III. The failure-to-intervene and deliberate indifference theories fail as a matter of law.**

Bystander liability attaches only where an officer knows a constitutional violation is occurring, has a reasonable opportunity to prevent the harm, and chooses not to act. *Randall v. Prince George's County*, 302 F.3d 188, 204 (4th Cir. 2002). The force used was objectively reasonable and the undisputed timeline from hands-on contact, pull away, and takedown to handcuffing occurs within seconds and defeats any claim that Lieutenant Cash had a realistic opportunity to intervene before the force ceased.

On the medical needs theory, a pretrial detainee must show an objectively serious medical need and deliberate indifference. *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021). The record (based solely on Plaintiff's self-serving allegations) reflects, at most, brief discomfort and no lasting injury. That is insufficient as a matter of law.

IV. **The malicious prosecution claim fails because process issued on probable cause and any alleged misstatements were immaterial.**

A Fourth Amendment malicious prosecution claim requires seizure pursuant to legal process unsupported by probable cause and favorable termination. *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996). Here, the Magistrate issued process on sworn allegations of disorderly conduct and resisting. The facts establish probable cause.

Plaintiff's challenge to the incident report's reference to a "large crowd" is immaterial: even excising that description, the facts support probable cause given the late-night street location, loudly profane outbursts during an active police response, an ignored directive to calm down, and immediate physical resistance. The later dismissal without leave on a date when Corporal Estes was in training does not retroactively negate probable cause.

V. **Plaintiff's official-capacity claim against Sheriff Davis fails under *Monell* and *City of Canton*.**

It is undisputed that Sheriff Davis had no personal involvement with Plaintiff and that Plaintiff has asserted only an official-capacity claim against him. An official-capacity claim is treated as a claim against the governmental entity and requires proof of a policy, custom, practice, or failure to train that was the moving force behind a constitutional violation. *Monell*, 436 U.S. at 691; *City of Canton*, 489 U.S. at 388–92. Plaintiff identifies no Halifax County Sheriff's Office policy authorizing unlawful arrests or unreasonable force. Plaintiff does not specify any training deficiencies that caused a constitutional violation. To the contrary, the record includes a citizen-

complaint policy and references to use-of-force reporting and training obligations. (Doc. 41-1, pp. 31-35, 48-56). Isolated personnel actions and after-the-fact promotions do not establish a policy, custom, deliberate indifference, or causation. Rather, Plaintiff's claims arise out of actions taken against him specifically; he has not alleged that the officers regularly engaged in similarly unlawful conduct as to other citizens. The record does not show the existence of an express policy instituted by the Sheriff's Office, nor does it show Sheriff Davis, as a final policymaking authority, made decisions that violated Plaintiff's constitutional rights. Furthermore, there is no credible evidence regarding Sheriff Davis' failure to train the defendant-officers, nor does Plaintiff sufficiently establish facts indicating the existence of a persistent and widespread practice by the Sheriff's Office. *See White v. City of Greensboro*, 408 F. Supp. 3d 677, 691–92 (M.D.N.C. 2019), *vacated in part on other grounds*, 586 F. Supp. 3d 466 (M.D.N.C. 2022) (dismissing the plaintiff's official-capacity claims for failure to plausibly plead municipal liability). Plaintiff's incantation of the legal standard for a *Monell* claim is insufficient to establish a genuine issue of material fact. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Plaintiff has not identified any pattern of similar incidents that would put policymakers on notice that constitutional rights had been violated. Without evidence of a policy or deliberate indifference that was the moving force behind the alleged violation, the *Monell* claim fails as a matter of law.

     Moreover, Plaintiff seeks "Damages for the *Monell* Claim in the amount of $8,500,000." (Doc. 1, p. 17). To the extent Plaintiff seeks monetary relief for this claim, "state officials, sued for monetary relief in their official capacities" are not "persons subject to suit under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

**VI.     Qualified immunity independently bars the individual-capacity claims.**

Qualified immunity "provides a 'safe-harbor' from tort damages for police officers performing objectively reasonable actions in furtherance of their duties." *Porterfield v. Lott*, 156 F.3d 563, 568 (4th Cir. 1998). This "safe-harbor" ensures that officers will not be liable for "bad guesses in gray areas" but only for "transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). In gray areas, where the law is unsettled or murky, qualified immunity affords protection to an officer who takes an action that is not clearly forbidden—even if the action is later deemed wrongful. Simply put, qualified immunity exists to protect those officers who reasonably believe that their actions do not violate federal law. *Doe v. Broderick*, 225 F.3d 440, 453 (4th Cir. 2000).

Even assuming *arguendo* that this Court could find a triable issue of a constitutional violation on Plaintiff's version of events, the law did not clearly establish that arresting an individual who was loudly cursing in a public street shortly after midnight during an ongoing police response, after a directive to calm down, and who then pulled away from an attempted detention, was unconstitutional. As the Fourth Circuit has explained:

> [Courts] do not decide whether a right is clearly established like a customer in a buffet line selectively picking items and declining others to come up with the ideal meal. And the reason for this should be clear. The second prong of the qualified immunity analysis examines if the law fairly warned an officer that his conduct violated the Constitution. Mixing and matching parts of dissimilar decisions does not provide fair warning.

*Atkinson v. Godfrey*, 100 F.4th 498, 508 (4th Cir. 2024).

The First Amendment/fighting-words line is fact-intensive and context-dependent. *Chaplinsky*, 315 U.S. 568; *Bartow*, 997 F.3d at 207. The reasonableness of a brief takedown to secure a resisting subject is likewise context-specific under *Graham*. At minimum, officers of reasonable competence could disagree about the need for immediate control to prevent escalation

and restore order under the circumstances. Corporal Estes and Lieutenant Cash are entitled to qualified immunity.

## CONCLUSION

The undisputed record establishes probable cause for Plaintiff's arrest under North Carolina law; objectively reasonable force; no realistic opportunity for bystander intervention; no deliberate indifference to a serious medical need; and no basis for municipal liability. In all events, qualified immunity bars the individual-capacity claims.

Defendants Corporal Estes, Lieutenant Cash, and Sheriff Davis respectfully request that the Court grant their motion for summary judgment on all claims and deny Plaintiff's cross-motion.

Respectfully submitted, this the 15th day of December, 2025.

/s/ *Sonny S. Haynes*
James R. Morgan, Jr.
N.C. State Bar No. 12496
Sonny S. Haynes
N.C. State Bar No. 41303
Erin H. Epley
N.C. State Bar No. 50690
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC  27101
Telephone: (336) 721-3600
Facsimile: (336) 721-3660
E-mail:  Sonny.Haynes@wbd-us.com
E-mail:  Erin.Epley@wbd-us.com
E-mail:  Jim.Morgan@wbd-us.com

*Attorney for Defendants*

**CERTIFICATION OF WORD/PAGE LIMIT COMPLIANCE**

The undersigned certifies that this memorandum complies with the applicable page and formatting requirements for briefing in the Eastern District of North Carolina. The memorandum, exclusive of the case caption, the signature block, and certificates contains 2,669 words.

/s/ *Sonny S. Haynes*
Sonny S. Haynes
N.C. State Bar No. 41303
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC  27101
Telephone: (336) 721-3632
Facsimile: (336) 726-2227
E-mail:  Sonny.Haynes@wbd-us.com

*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

   I hereby certify that on December 15, 2025, I electronically filed the **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system, which will send email notification to the *pro se* Plaintiff.

Terrance Johnson, II
400 W. 3rd Street
Apt 6
Weldon, NC 27890
Terrancejohnson2008@yahoo.com
*Plaintiff, pro se*

/s/ *Sonny S. Haynes*
Sonny S. Haynes
N.C. State Bar No. 41303
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3632
Facsimile: (336) 726-2227
E-mail: Sonny.Haynes@wbd-us.com

*Attorney for Defendants*