IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:25-CT-03011-BO

| | |
|---|---|
| TERRANCE JOHNSON, II, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **DEFENDANTS' RESPONSE** |
| v. ) | **IN OPPOSITION TO** |
| ) | **PLAINTIFF'S MOTION FOR** |
| NICOLAS ESTES, ANTHONY CASH, and ) | **SUMMARY JUDGMENT** |
| TYREE DAVIS, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

NOW COME Defendants Corporal Nicolas Estes, Lieutenant Anthony Cash, and Halifax County Sheriff Tyree Davis, by and through undersigned counsel, and submit this response in opposition to Plaintiff's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. 38).

**RELEVANT PROCEDURAL BACKGROUND**

Plaintiff filed this action on January 13, 2025. (Doc. 1). After initial review, only the claims against Corporal Estes, Lieutenant Cash, and Sheriff Davis (in his official capacity) proceeded. (Doc. 6). Plaintiff moved for summary judgment and filed a memorandum, a statement of purportedly undisputed material facts, and an appendix including a Magistrate's Order, medical records, screenshots, and references to video evidence. (Docs. 38, 40, 41, 41-1). Defendants filed their motion for summary judgment, supporting memorandum, and Local Civil Rule 56.1 statement with an appendix that includes sworn declarations and identifies the BWC recordings as exhibits. (Docs. 48, 49, 50). Defendants have filed the BWC recordings of Corporal Estes and Lieutenant Cash with authenticating declarations. (Docs. 56, 57); *see* (Docs. 50; 50-1, Exs. 3–4).

The record thus includes: (i) the July 7, 2024, Magistrate's Order issuing process for disorderly conduct and resisting/delaying/obstructing; (ii) CAD/radio extracts documenting an active crowd, blocked streets, and EMS routing issues around the time and place of the arrest; (iii) the incident/investigation report memorializing loud profane utterances in the street and physical pulling away upon attempted detention; (iv) Plaintiff's July 9, 2024, medical "After Visit Summary" documenting generalized myalgia; and (v) Plaintiff's own descriptions and timestamps from BWC and a third-party time-lapse.

## ARGUMENT

The BWC recordings capture the key sequence: after midnight near West Third and Chestnut in Weldon, an active police response is underway; Plaintiff is in the street loudly using profanity; Corporal Estes directs him to calm down and stop yelling profanities; as Corporal Estes initiates a hands-on detention, Plaintiff pulls his arm away; a brief takedown secures control; Lieutenant Cash arrives and issues commands; and handcuffing is completed within seconds without strikes, weapons, or prolonged force. Plaintiff's medical visit two days later documents soft-tissue soreness and prescriptions for naproxen and tizanidine. Criminal charges were dismissed on November 13, 2024, when Corporal Estes, then in training, was unable to appear on a rescheduled court date.

**I.  Plaintiff cannot carry his Rule 56 burden on First Amendment retaliation or unlawful arrest.**

Plaintiff's theory that he was arrested "for speech" is untenable on this record. The BWC recordings, CAD/radio extracts, and incident report establish a late-night street-side disturbance during an ongoing police response to crowd and EMS-access issues, a directive to calm down, and physical pull-away upon an attempted detention. *See* (Doc. 49 ¶¶ 1–7; Doc. 41-1 at pp. 20–26; Doc. 56 ¶¶ 2–4). The Fourth Amendment allows arrest on probable cause that a misdemeanor

occurred in the officer's presence, and North Carolina law proscribes disorderly conduct by utterances or abusive language intended and plainly likely to provoke violent retaliation and cause a breach of the peace. *See* N.C. Gen. Stat. § 14-288.4. The First Amendment protects profanity and criticism of police in many contexts, but it does not immunize "fighting words," true threats, or conduct plainly likely to provoke immediate violence. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942). The Fourth Circuit emphasizes context, including time, place, volume, gestures, and crowd dynamics. *United States v. Bartow*, 997 F.3d 203, 207–08 (4th Cir. 2021) (observing that the Supreme Court has repeatedly stated that whether speech constitutes "fighting words" must be analyzed on a case-by-case basis. Courts must "consider[ ] the actual circumstances surrounding such expression."). *See also R.A.V. v. City of St. Paul*, 505 U.S. 377, 432 (Stevens, J., concurring) ("Whether words are fighting words is determined in part by their context.").

Most critically, even if the Court assumed *arguendo* that Plaintiff's words were protected speech, the undisputed pull-away during a lawful public-order response independently supplied probable cause for resisting/delaying/obstructing under section 14-223 of the North Carolina General Statutes. North Carolina law requires willfulness, but not violence; purposeful physical interference with an officer attempting to discharge duty suffices. *See State v. Humphreys*, 853 S.E.2d 789, 796–97 (2020). Plaintiff's own filings concede the pull-away. (Docs. 40 at 2–3; 41 at 10–12). Disputes about the number of bystanders or the distance to a separate gathering are immaterial once the core factual sequence is established. On this record, Plaintiff is not entitled to judgment as a matter of law on First Amendment retaliation or unlawful arrest; to the contrary, the BWC confirms probable cause that defeats his claims and independently entitles the officers to qualified immunity.

**II.     The brief takedown and handcuffing were objectively reasonable under *Graham*.**

Excessive force claims are evaluated under the Fourth Amendment's objective reasonableness test, considering the severity of the suspected offense, any immediate threat, and resistance or flight. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). The BWC shows a brief takedown after Plaintiff pulled his arm away, followed by handcuffing within seconds, without strikes, weapons, or prolonged force. (Doc. 49 ¶¶ 2–3, 6–7; Exs. 3–4; Doc. 56 ¶ 3). Plaintiff's medical record reflects generalized muscle soreness and routine pain treatment. (Doc. 41-1 at 6–8). In the circumstances of a late-night public-order response and immediate physical resistance, the limited force used to secure control was objectively reasonable as a matter of law. Plaintiff's references to transient heat complaints in a vehicle do not convert reasonable force into a constitutional violation, particularly where there is no evidence of a particular injury or lasting harm.

**III.    Plaintiff's failure-to-intervene and deliberate indifference theories fail on this record.**

Bystander liability requires knowledge of a constitutional violation, a realistic opportunity to prevent it, and a failure to act. *Randall v. Prince George's County*, 302 F.3d 188, 204 (4th Cir. 2002). The BWC confirms a seconds-long sequence from hands-on contact to takedown to handcuffing. There was no realistic opportunity for additional intervention, and the force ceased once control was obtained.

The medical-needs theory fails because Plaintiff identifies no objectively serious medical need and no deliberate indifference. The videos and the medical record reflect, at most, brief discomfort and no lasting injury. (Docs. 40 at 3–4; 41-1 at 6–8; 49 ¶¶ 2–3; 56 ¶ 3). *See also Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021).

**IV.     Plaintiff's malicious prosecution claim fails because legal process issued on probable cause and any alleged misstatement is immaterial.**

A Fourth Amendment malicious prosecution claim requires legal process unsupported by probable cause and favorable termination. *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183–84 (4th Cir. 1996); *Thompson v. Clark*, 142 S. Ct. 1332, 1337–41 (2022). In Plaintiff's case, the Magistrate issued process for disorderly conduct and resisting/delaying/obstructing. (Doc. 41-1 at 4–5). The BWC and undisputed facts establish probable cause, or at least arguable probable cause, for the arrest. (Docs. 48 at 3–6; 49 ¶¶ 1–7). Plaintiff's critique of "crowd" descriptions is immaterial; excising those phrases leaves the dispositive facts intact: a late-night street disturbance, commands to calm down, and an immediate pull-away upon attempted detention. (Docs. 40 at 4–6; 41-1 at 24–26; 49 ¶¶ 1–7). The subsequent dismissal does not negate probable cause. *Thompson*, 142 S. Ct. at 1341 ("a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence.").

**V.     Plaintiff's *Monell*/official-capacity claim fails for lack of policy, custom, deliberate indifference, or causation.**

Municipal liability requires a policy or custom that is the moving force behind a constitutional violation, or a failure-to-train amounting to deliberate indifference. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–94 (1978); *City of Canton v. Harris*, 489 U.S. 378, 388–92 (1989). Plaintiff identifies no policy authorizing unlawful arrests or unreasonable force, no pattern of similar incidents, and no causal link to deficient training. *See* (Doc. 41-1 at 28–35, 45–53; Doc. 48 at 7–9). Personnel actions after the incident do not establish a preexisting policy or causation. *Id.* To the extent Plaintiff seeks monetary relief from Sheriff Davis in his official capacity, such

claims are barred. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("state officials, sued for monetary relief in their official capacities" are not "persons subject to suit under § 1983.").

## VI. Qualified immunity bars Plaintiff's individual-capacity claims.

Qualified immunity protects officials unless they violate clearly established law. *Pearson*, 555 U.S. 223, 231–36 (2009). The context-specific First Amendment and *Graham* inquiries, the crowd/EMS conditions, and the immediate pull-away present the sort of close, fact-bound circumstances in which officers of reasonable competence could disagree about the need to act, the need to secure control, and whether probable cause existed. *See* (Doc. 48 at 9–10; *Chaplinsky*, 315 U.S. 568; *Bartow*, 997 F.3d at 207–08; *Graham*, 490 U.S. at 396–97). There is no bright-line rule from the Supreme Court of the United States or any other federal court establishing that the conduct of Lieutenant Cash and Corporal Estes violated a clearly established constitutional right under the factual circumstances presented. On this record, qualified immunity independently warrants judgment for Corporal Estes and Lieutenant Cash.

## VII. The body-worn camera recordings defeat Plaintiff's request for summary judgment.

*Scott v. Harris* instructs that when video evidence blatantly contradicts one side's narrative, the court should not adopt that version for summary judgment purposes. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The BWC recordings filed with the Court confirm Defendants' account and foreclose Plaintiff's contention that protected speech alone caused the arrest. The videos show a rapidly evolving scene, a directive to calm down, a physical pull-away, a brief takedown, immediate cessation of force, and the absence of any strikes. The BWC establishes that Defendants are entitled to judgment as a matter of law.

## CONCLUSION

Plaintiff's motion for summary judgment fails because the record establishes probable cause for the arrest, objectively reasonable force, no viable bystander or medical-needs theory, no malicious prosecution, and no *Monell* basis for municipal liability. In all events, qualified immunity bars the individual-capacity claims. The Court should deny Plaintiff's motion and grant Defendants' motion for summary judgment on all claims.

Respectfully submitted, this the 22nd day of December, 2025.

/s/ *Sonny S. Haynes*
James R. Morgan, Jr.
N.C. State Bar No. 12496
Sonny S. Haynes
N.C. State Bar No. 41303
Erin H. Epley
N.C. State Bar No. 50690
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3600
Facsimile: (336) 721-3660
E-mail: Sonny.Haynes@wbd-us.com
E-mail: Erin.Epley@wbd-us.com
E-mail: Jim.Morgan@wbd-us.com

*Attorney for Defendants*

**CERTIFICATION OF WORD/PAGE LIMIT COMPLIANCE**

The undersigned certifies that this memorandum complies with the applicable page and formatting requirements for briefing in the Eastern District of North Carolina. The memorandum, exclusive of the case caption, the signature block, and certificates contains 1,705 words.

/s/ *Sonny S. Haynes*
Sonny S. Haynes
N.C. State Bar No. 41303
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC  27101
Telephone: (336) 721-3632
Facsimile: (336) 726-2227
E-mail:  Sonny.Haynes@wbd-us.com

*Attorney for Defendants*

# CERTIFICATE OF SERVICE

    I hereby certify that on December 22, 2025, I electronically filed the **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system, which will send email notification to the *pro se* Plaintiff.

    Terrance Johnson, II
    400 W. 3rd Street
    Apt 6
    Weldon, NC 27890
    Terrancejohnson2008@yahoo.com
    *Plaintiff, pro se*

/s/ *Sonny S. Haynes*
Sonny S. Haynes
N.C. State Bar No. 41303
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3632
Facsimile: (336) 726-2227
E-mail: Sonny.Haynes@wbd-us.com

*Attorney for Defendants*