IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:25-CT-03011-BO

FILED

JAN 2 0 2026

PETER A. MOORE JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

| | |
|---|---|
| TERRANCE JOHNSON, II, pro se )<br><br>  Plaintiff, )<br><br> )<br><br>  v. )<br><br> )<br><br> NICOLAS ESTES, et al. )<br><br>  Defendants, )<br><br> ) | **PLAINTIFF'S REPLY<br>IN SUPPORT OF<br>PLAINTIFF'S MOTION<br>FOR SUMMARY JUDGMENT** |

NOW COMES Plaintiff, Terrance Johnson, II, pro se and submits this reply in support of his motion for summary judgment pursuant to Local Rule 7.1(g)(1). In support of this motion, Plaintiff states the following:

### RELEVANT PROCEDURAL HISTORY

Plaintiff filed his Complaint on January 13, 2025. (Doc. 1). After initial review, Plaintiff was allowed to proceed against Corporal Estes, Lieutenant Cash and Sheriff Davis on limited theories. (Doc. 6). Plaintiff filed his motion for summary judgment and supporting documents. (Docs. 38, 39, 40, 41, 41-1, 46). Defendants subsequently filed their motion for summary judgment and supporting documents. (Docs. 48, 49, 50, 50-1, 54, 56, 57). Defendants filed a response in opposition to Plaintiff's motion for summary judgment. (Doc. 58.)

**ARGUMENT**

## I. Plaintiff has carried his Rule 56 burden on First Amendment retaliation and unlawful arrest

The incident began with Plaintiff being endangered while he walked across the street and briefly using profanity while remonstrated to Corporal Estes. (Doc. 54, Ex. 3, 00:00:14-00:00:44). Corporal Estes at that time, directed Plaintiff to "calm down" or he would be taken to Halifax for "cursing in the street," and Plaintiff would "have to quit cursing and you need to carry your *ass* down the street." *Id.* Plaintiff responded "Imma say what I want to say yes Imma say what the hell I want to say," as he turned around and began walking away from Corporal Estes *four seconds later*. At that point Plaintiff was seized from behind *without announcement or explanation.* Id at 00:00:44-00:00:51). Defendants contend that "Plaintiff's theory that he was arrested 'for speech' is untenable on this record." (Doc. 58 at p. 2). Defendants contend that the seizure was a would be detention and not an arrest. Plaintiff's language was not alleged to have been insulting, threatening, inflammatory, or otherwise abusive. Defendants contend that Plaintiff was merely standing in front of a parked patrol vehicle, "in the street loudly using profanity." (Doc. 58 p. 2). Defendants seem to assert that there was a legal basis to require Plaintiff to be calm and quiet, while there was a *permitted* block party with loud music 500 feet away, at which there were multiple ongoing disturbances that Defendants Estes and Cash were dispatched to help with. (Doc. 41-1 p. 21 line 20, pp. 25-26) The videos show no crowd, no agitation or public reaction throughout the *consensual* encounter. The only nearby individual, an older woman who did not get agitated by Plaintiff's words,

2

walked away after the arrest. No reasonable officer would believe that Plaintiff's brief use of profanity in a course of *remonstration*, amounted to "abusive language which [could reasonably be construed as] intended and plainly likely to provoke violent retaliation" under the above mentioned circumstances. N.C. Gen. Stat. § 14-288.4(a).

Defendants rely on *United States v. Bartow*, 997 F.3d 203 (4th Cir. 2021), to claim that factors such as "time, place, volume, gestures, and crowd dynamics" restrict First Amendment protection. (Doc. 58, p. 3). Though this limitation *may* exist, *Bartow* contains no such discussion. It holds that offensive speech loses protection when it is "likely to provoke a violent reaction ... by the person to whom individually, [it was] addressed" *Bartow*, 997 F.3d at 211. Here "the person to whom individually, it was addressed," was Corporal Estes. *Id.* Corporal Estes is not an "average person," as "a properly trained officer may reasonably be expected to 'exercise a higher degree of restraint' than the average citizen, and thus be less likely to respond belligerently to 'fighting words.'" *City of Houston v. Hill*, 482 U.S. 451, 462 (1987). Also noted is that in the present case, N.C. Gen. Stat. 14-288.4 was "invoked only where there [was] no other basis for arresting an objectionable[] person." *Id.* at 466. "[A] principal 'function of free speech under our· system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger.'" *Texas v. Johnson*, 491 U.S. 397, 408-409 (1989). The question is whether Corporal Estes had reasonable suspicion to believe the expression was "directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Id.* at 409. Plaintiff's words and conduct could not have provided Corporal Estes with a reasonable suspicion that Plaintiff intended to, or would have incited this *older* woman to "imminent lawless action." *Id.* The video shows Plaintiff complying with *all* directives, ceasing profanity and

3

walking away while merely verbally expressing constitutionally protected words. The older lady did not speak a word, but simply walked away while engaging in a phone conversation. Absent a crowd, no reasonable officer could even *arguably* believe that there was a "fair probability" of a breach of the peace, as the public disturbance element was missing. *United States v. Marshall*, No. 16-4594, p. 8 (4th Cir. 2018) (citing Harris, 568 U.S. at 244). Accordingly, no reasonable officer could believe that Corporal Estes had enough information to make an investigative detention of Plaintiff lawful.

"A cognizable First Amendment retaliation claim requires a plaintiff to show: (1) 'that [plaintiff's] speech was protected'; (2) 'defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech'; and (3) 'a causal relationship exists between [plaintiff's] speech and the defendant's retaliatory action.'" *Tobey v. Jones*, 706 F. 3d 379, 387 (4th Cir. 2013). Plaintiff's theory of First Amendment retaliation rests on the premise that Plaintiff's speech was "protected", Corporal Estes' threats of arrest and sudden seizure constitute "retaliatory action that adversely affected the plaintiff's constitutionally protected speech" and Plaintiff's protected speech made prior to the seizure, was the proximate "cause" of the retalitory action. *Id.* Plaintiff merely cursed while *briefly* "speaking out" against the behavior of an officer. *Nazario v. Gutierrez*, 103 F. 4th 213, 237 (4th Cir. 2024). "There can be no dispute that [Plaintiff's] theory satisfies the first element of a retaliation claim, because speaking out about the behavior and misconduct of police officers constitutes protected speech." *Id.* The other two prongs are admitted by Defendants.

Furthermore, at the time of the seizure, Plaintiff was *walking away* from Corporal Estes, *four seconds* after being directed to do so. Plaintiff complied with *all* directives. A *lawful* investigative seizure of Plaintiff would have required that Corporal Estes be provided with at

4

least reasonable suspicion "that criminal activity may be afoot." *Terry v. Ohio*, 392 US 1, 30 (1968). Plaintiff's brief act of remonstration did not give Defendant Estes reasonable suspicion to believe that Plaintiff was involved in "criminal activity." *Id.* Likewise, under no plausible scenario could a reasonable officer believe that there was a "fair probability" of Plaintiff's words provoking the only citizen within earshot, to a breach of the peace under the circumstances. *Florida v. Harris*, 568 U.S. 237, 244 (2013). Detaining Plaintiff in this situation would all but *invite* onlookers that would possibly get agitated. It would also be illogical to detain Plaintiff in handcuffs, next to a patrol vehicle for 10 to 30 minutes, while there was an allegedly armed individual 500 feet away, that was accused of chasing and choking his girlfriend just minutes prior to Plaintiffs attempted detention. (Doc. 41-1, p. 15 Lines 2-13).

Defendants attempt to obfuscate the First Amendment issue by claiming that "even if this Court assumed arguendo that Plaintiff's words were protected speech, the undisputed pull-away during a lawful public-order response independently supplied probable cause for resisting/delaying/obstructing under section 14-223[.]" (Doc. 58 at 3). Such a position is untenable under binding precedent. "In the case at hand the evidence on which the Defendants rel[y] fails to show *prima, facie* that the defendant's conduct at the time of the arrest amounted either to an actual or threatened breach of the peace within the intent and meaning of [N.C. Gen. Stat. § 14-223.] Hence, the arrest must be treated as illegal. This being so, [Defendants] failed to make out a *prima facie* case of resisting arrest." *State v. Mobley*, 83 S.E.2d 100, 106, 240 N.C. 476, 485 (1954). Most critically, Corporal Estes attempted an immediate takedown of Plaintiff. (Doc. 54, Ex. 4, 00:00:27-00:00:33).

Corporal Estes engaged in a sequence of objectively unreasonable physical actions in response to speech that was protected under the First Amendment. Defendants allege that

"Corporal Estes directs [Plaintiff] to calm down and stop yelling profanities; as Corporal Estes initiates a hands-on detention, Plaintiff pulls his arm away; a brief takedown secures control; Lieutenant Cash arrives and issues commands; and handcuffing is completed within seconds[.]" (Doc. 58 p. 2). There can be no willful intent, where Plaintiff had not violated an initial statute and had not been given verbal commands by the arresting officer. Under those circumstances, Plaintiff had no indication or opportunity to comply, prior to or during Corporal Estes going "hands-on." *Id.* Therefore "willful" resistance is precluded and even under Defendant's version of events. "When used in [N.C.G.S. § 14-223], 'willful' is to be interpreted as something more than an intention to do a thing. It implies the doing [of] the act purposely and deliberately, indicating a purpose to do it without authority — careless whether [someone] has the right or not — in violation of law, and it is this which makes the criminal intent without which one cannot be brought within the meaning of a criminal statute." *State v. Humphreys*, 853 SE 2d 789, 796-797 (2020). The element of "willful" intent is lacking in the current case. *Id.* Accordingly, Plaintiff is entitled to summary judgment on the issues of false arrest and First Amendment retaliation.

## II. Defendants admit to excessive force

Defendants contend "[t]he BWC shows a brief takedown after Plaintiff pulled his arm away, followed by handcuffing within seconds, without strikes, weapons, or prolonged force. (Doc. 49 ¶¶ 2–3, 6–7; Exs. 3–4; Doc. 56 ¶ 3)" (Doc. 58 at 4). The Fourth Circuit has "held that a reasonable officer could not believe that the 'initial act of pulling [one's] arm away' when an officer grabs a person 'without warning or explanation' justifies the officer's decision to throw the person to the ground." *Hupp v. Cook*, 931 F. 3d 307, 323 (4th. Cir. 2019). (quoting *Smith v. Ray*, 781 F. 3d 95, 103 (4th. Cir. 2015)). Defendants' contention appears to be an open admission to committing an act of excessive force under *Hupp*, and *Smith*. *Id.* Based on Defendants' own

account, Plaintiff is entitled to summary judgment on his claim of excessive force as a matter of law.

**III.    Lieutenant Cash is liable for failure to intervene and deliberate indifference**

Plaintiff's claim of failure to intervene is not tied to the "seconds-long sequence from hands-on contact to takedown to handcuffing." (Doc. 58, p. 4). Plaintiff claims that Lieutenant Cash failed to intervene in the unlawful *detention and arrest* of Plaintiff. As demonstrated above, Plaintiff's arrest was not supported by probable cause. "It is clear that [Lieutenant Cash]... [was] aware that [Plaintiff was] being detained unlawfully, had an opportunity to end the detention[], and [he] did not do so." *Randall v. Prince George's County*, 302 F.3d 188, 204 (4th. Cir. 2002). Thus, Lieutenant Cash is liable for failure to intervene. Accordingly, Plaintiff is entitled to summary judgment on the issue of failure to intervene.

**IV.    Defendants contend that Plaintiff's malicious prosecution claim fails because there was probable cause for Plaintiff's arrest.**

Defendants contend that "[t]he BWC and undisputed facts establish probable cause, or at least arguable probable cause, for the arrest." (Doc 58. At 5). This contention is discussed above. This claim is intertwined with Plaintiff's allegation of unlawful arrest. Simply put, the facts taken in light most favorable to Plaintiff, show that Plaintiff had a clearly established right to be free of unlawful arrest under the circumstances. Corporal Estes' "decision to request [process] for [Plaintiff's] arrest was outside the range of professional competence expected of an officer." Graham v. Gagnon, 831 F.3d 176, 184 (4th Cir. 2016). Under binding Supreme Court precedent, Plaintiff has shown favorable termination by showing that the prosecution ended with no conviction. *See Thompson v. Clark*, 596 U.S. 36 (2022) (holding that favorable termination is

satisfied by the prosecution ended with no conviction). Accordingly Plaintiff is entitled to summary judgment on his claim of malicious prosecution.

## V.      Sheriff Davis is liable for failure to train and failure to implement necessary policy

"The outer limits of liability in any given case are determined ultimately by pinpointing the persons in the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked. The final determination "generally is one of fact, not law." *Slakan v. Porter*, 737 F. 2d 368, 373 (4th. Cir. 1984). Here the responsibility to ensure that patrol officers are properly trained regarding the First Amendment, lies with Sheriff Davis. "[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 & n.10 (1989). As a patrol officer tasked with communicating with the public on a regular basis, Lieutenant Cash's training records do not contain evidence of instruction on the First Amendment, and Defendants did not produce any policy that "forbids Halifax County Sheriffs from turning off their vehicle's ignition when a passenger is in the vehicle." *See* (Doc. 6 at 4; Doc. 41-1, p. 39 Interogg. ¶ 8, p. 45 Req. ¶ 8; Doc. 41-1, pp. 48-56). Plaintiff's arrest would not have been likely but for Defendant Cash's lack of First Amendment training. Plaintiff likely would not have been subjected to elevated temperatures but for the lack of a policy that forbids Halifax County Sheriff deputies from turning off their vehicle's ignition when a passenger is in the vehicle. Accordingly, Plaintiff is entitled to summary judgment on the issues of failure to train and failure to implement a policy that forbids Halifax County Sheriff deputies from turning off their vehicle's ignition when a passenger is in the vehicle.

8

## VI. Qualified immunity does not apply in this case

Defendants contend that "[t]here is no bright-line rule from the Supreme Court of the United States or any other federal court establishing that the conduct of Lieutenant Cash and Corporal Estes violated a clearly established constitutional right under the factual circumstances presented. On this record, qualified immunity independently warrants judgment for Corporal Estes and Lieutenant Cash." (Doc. 58 at 6). This court "must determine, first, whether the facts viewed in [Plaintiff's] favor make out a violation of his [] constitutional rights, and second, whether that violated right was clearly established at the time." *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022) (citing *Pearson v. Callahan,* 555 U.S. 223, 231 (2009)). "In the Fourth Circuit, we have a split burden of proof for the qualified-immunity defense. The plaintiff bears the burden on the first prong, and the officer bears the burden on the second prong." *Id.* (citing *Henry v. Purnell,* 501 F.3d 374, 377-78 & n.4 (4th Cir. 2007)). Defendants have not carried their "burden on the second prong," but merely assert self serving conclusory statements, and highlight circumstances that do not present a material dispute of fact. Id. His seizure lacked probable cause under statutory law. Plaintiff's instinctive pull-away was not willful resistance but a reflexive response to sudden force, which cannot justify arrest. The law was clearly established that officers may not seize a compliant citizen for protected speech absent a true public disturbance. *Hill*, 482 U.S. 451; . *Marshall*, No. 16-4594, p. 8; *Feiner v. New York*, 340, U.S. 315 (1951). The illegality of arresting an individual who complied with all officer directives, is "beyond debate." Ashcroft v. Al-Kidd, 563 U.S. 731, 741 (2011). Qualified immunity therefore cannot apply.

Respectfully submitted this 20th day of January, 2026.

Terrance Johnson II
400 West Third Street
Apartment 6
Weldon, North Carolina 27890
Telephone: (252) 529-5022
Email:TerranceJohnson2008@yahoo.com
*Plaintiff, pro se*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and exact copy of the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** has been sent to the following Attorney for the Defendants via United States Postal Service on this 20th day of January, 2026.

Sonny S. Haynes
One West Fourth Street
Winston-Salem, North Carolina 27101
Telephone: (336) 721-3632
Facsmile: (336)726-2227

Terrance Johnson II
400 West 3rd Street
Apt 6
Weldon, North Carolina 27890
Email:TerranceJohnson2008@yahoo.com
Telephone: (252)529-5022
*Plaintiff, pro se*

## CERTIFICATION OF WORD/PAGE LIMIT COMPLIANCE

I Terrance Johnson, hereby certify that this memorandum complies with the word limit

established by the Eastern District of North Carolina. The memorandum in total contains 2764

words and 10 pages.

Terrance Johnson II
400 West Third Street
Apartment 6
Weldon, North Carolina 27890
Telephone: (252) 529-5022
Email:terrancejohnson2008@yahoo.com
*Plaintiff, pro se*