IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:25-CT-03011-BO

| | | |
|---|---|---|
| TERRANCE JOHNSON, II, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| NICOLAS ESTES, ANTHONY CASH, | ) | |
| and TYREE DAVIS, | ) | |
| | ) | |
| Defendants. | ) | |

Terrance Johnson, II ("plaintiff") filed this civil rights action *pro se* pursuant to 42 U.S.C. § 1983. The matter now is before the court on the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) (DE 38, 47). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants defendants' motion for summary judgment and denies plaintiff's motion for summary judgment.

**STATEMENT OF THE CASE**

On January13, 2025, plaintiff filed his § 1983 complaint. On April 2, 2025, the court granted plaintiff leave to proceed in forma pauperis and conducted an initial review of plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). The court allowed plaintiff to proceed with the following claims: defendant Halifax County Sheriff's Deputy Nicolas Estes ("Estes") violated his rights pursuant to the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution in connection with an alleged unlawful arrest and the alleged use of excessive force; defendants Halifax County Sheriff's Deputy Anthony Cash ("Cash"), and Roy Rooks ("Rooks")

failed to intervene during the alleged unlawful arrest; and defendant Halifax County Sheriff Tyree Davis ("Davis") failed to train defendants Estes, Cash, and Rooks. Plaintiff subsequently voluntarily dismissed defendant Rooks from this action because he "mistook [Rooks] for Corporal Guy Caine ("Caine")[1] during the incident." See (DE 10, 17); see also, ((DE 62-1), p. 3).

Following a period of discovery, plaintiff filed a motion for summary judgment pursuant to Rule 56(a). Plaintiff also filed a memorandum in support of his motion for summary judgment as well as a statement of undisputed material facts with attached exhibits. Plaintiff subsequently manually filed video exhibits. On December 15, 2025, defendants filed a motion for summary judgment pursuant to Rule 56(a), arguing plaintiff cannot establish a constitutional violation. Defendants alternatively assert the affirmative defense of qualified immunity. Defendants filed a statement of material facts, with an appendix.[2] Defendants also manually filed video exhibits, as well as a response to plaintiff's motion for summary judgment. Plaintiff responded to defendants' motion for summary judgment and filed supplemental exhibits. See (DE 62, 63, 65). On January 20, 2026, plaintiff filed a reply to his motion for summary judgment.

## STATEMENT OF FACTS

On July 7, 2024, "there was an ongoing block party" at 407 Chestnut Street, which was near plaintiff's house. ((DE 1), p. 10; (DE 41), p. 2; (DE 41-1), p. 16). After midnight, defendant Estes responded to the area of Chestnut Street and West Third Street in Weldon, North Carolina to assist the Weldon Police Department with crowd control at a block party with approximately 200 people, and related disturbances in the surrounding blocks. ((DE 49) ¶ 1; (DE 62-2) ¶ 1; (DE 41-1), pp. 16, 21). Estes received communication that the large crowd and blocked streets were

---

[1] Guy Caine is not a defendant in this action.
[2] Defendants later supplemented the record with signed declarations. See (DE 56, 57).

2

making it difficult for EMS to get to the area to respond to a medical emergency. ((DE 57) ¶ 2). At approximately 12:30 a.m., plaintiff observed "red lights" from an ambulance outside of his apartment and went outside to investigate. ((DE 1), p. 10; ((DE 62-4) ¶ 2). Plaintiff next crossed West Third Street to speak with a neighbor to see if she "knew what was happening." (Id.)

While plaintiff was speaking with his neighbor, he observed a marked patrol vehicle parked behind a stop sign at the intersection of Chestnut Street and West Third Street. (Id.; (DE 41), p. 14) ("Defendants parked at the intersection of Chestnut Street and West Third Street, and had just begun walking toward [the] distant gathering when they arrested Plaintiff at that intersection."). Plaintiff decided to distance himself from the law enforcement officers to "avoid trouble," and crossed West Third Street. ((DE 1), p. 10). As plaintiff was crossing West Third Street, he observed another "patrol vehicle sitting at the intersection of Mulberry and West Third Streets. It did not have blue flashing lights activated[.]" ((DE 62-4) ¶ 4). According to plaintiff, when he neared the middle of West Third Street, "the patrol vehicle's blue lights illumined, and the vehicle began rapidly accelerating on West Third Street, directed toward [plaintiff]." (Id.) Plaintiff then

> hunched his shoulders and said out loud but not to anyone in particular, something to the extent of "What the [F---] is his problem" or "What's his problem!?" Plaintiff finished crossing the street and the vehicle slowed and rapidly made a right turn in front of Plaintiff. As the vehicle turned, Plaintiff verbally expressed disapproval or remonstration of [the officer's] actions as he rapidly accelerated before parking.

((DE 1), pp. 10-11); see also, (DE 62-4) ¶ 4). The officer driving the patrol vehicle did not have "sirens activated." ((DE 64-2) ¶ 4). The video evidence submitted by the parties, however, reflects that there were no vehicles present at, or immediately near, the intersection of Chestnut and West Third Streets when plaintiff crossed the street. See (Estes body cam video: 00:16-00:26; Seicane camera video: 2:48-2:52).

3

When defendant Estes arrived at the location, he encountered plaintiff walking across the street. ((DE 49) ¶ 1; (DE 62-2) ¶ 1) The incident was captured by the body cameras worn by defendants Estes and Cash. See (Estes body cam video; Cash body cam video).[3] After defendant Estes parked and exited his vehicle, he approached plaintiff who was standing in the cross-section of Chestnut Street and West Third Street. (Estes body cam video: 00:00-00:21). Plaintiff was agitated and was having a verbal disagreement with the officers already at the location.[4] (Id. 00:18-00:28).

When plaintiff arrived at the side of the road, defendant Estes told plaintiff to calm down, and plaintiff responded: "no, no, no, no, this [N---a] rolled down the road and [], yo bro what the [F---] is you doing?"[5] (Id. 00:29-00:33). Defendant Estes calmly responded: "He had his blue lights on." (Id. 00:33-00:35). Plaintiff refused to accept defendant Estes' "excuse of blue lights," and stated: "I don't give a [F---] bro, you don't roll . . ." ((DE 41), p. 1; Estes body cam video: 00:35-00:38). One of the officers told plaintiff that he needed to calm down "before we go to Halifax." (Estes body cam video: 00:37-00:41). Another officer told plaintiff to quit "cussin" and to "carry [his] ass down the street" while plaintiff repeatedly stated, "hey listen, hey listen." (Estes body cam video: 00:40-00:46). Plaintiff also stated, "I'm going to say what I'm going to say bro" and an officer responded, "no sir." (Id. 00:42-00:46). Defendant Estes believed plaintiff's statements were "escalating an already tense situation." ((DE 57) ¶ 3).

---

[3] Both plaintiff and defendants filed video footage captured by the body cameras of defendants Estes and Cash. Plaintiff also filed a USB drive containing "Seicane" video footage. See ((DE 45) ¶ 1).

[4] The body cam videos are silent while plaintiff is crossing the street, but the audio for the videos activates once plaintiff has crossed the street. See (Estes body cam; Cash body cam).

[5] Plaintiff was highly agitated during the verbal exchanges with the officers and, at times, talked over the officers' instructions making it difficult to discern the exact words that were said. The court has done its best to transcribe the verbal exchanges between plaintiff and the officers.

4

At this point, plaintiff turned and began to walk away from defendant Estes and told Estes to get out of his face. (Id. 00:48-00:51; Cash body cam video: 00:28-00:32). Defendant Estes next reached for plaintiff's arm. (Estes body cam video: 00:52-00:53); Cash body cam video: 00:28-00:31). Plaintiff pulled back from Estes, ultimately breaking away. (Estes body cam video: 00:52-00:55; Cash body cam video: 00:31-00:37). Plaintiff lost his balance and fell to the ground, while Estes continued to pursue plaintiff. (Estes body cam video: 00:54-00:57); Cash body cam video: 00:33-00:36). Plaintiff next stood up and began to again move away from Estes, and repeated "get the [F---] off me." (Estes body cam video: 00:54-00:58; Cash body cam video: 00:33-00:36). Estes struggled with plaintiff, and then briefly took plaintiff to the ground until he regained control over plaintiff. (Estes body cam 00:51-1:05; Cash body cam 00:38-00:44). The officers next calmly assisted plaintiff to a standing position and plaintiff complied with the officers' instructions to put his hands behind his back. (Estes body cam 1:05-1:13; Cash body cam 00:42-00:46). The officers placed plaintiff in wrist restraints and escorted him to a nearby patrol car. (Cash body cam 00:46-1:03). At this point, the officers on the scene were calm while plaintiff continued to yell at the officers. (Estes body cam 1:13-1:19; Cash body cam 00:53-1:11).

According to plaintiff, the officers next placed him in the back of Officer Caine's patrol vehicle and intentionally "cut the vehicle's engine off" and lowered the window approximately two inches. ((DE 62-4) ¶ 8). Plaintiff states that after an officer closed the vehicle's door, plaintiff "yelled multiple times" that he was having trouble breathing. (Id.) Plaintiff further states that an "unknown deputy looked at me, saying something [he] understood to be 'well you should have behaved then.'" (Id.) Plaintiff estimates that the temperature on July 7, 2024, was "in the mid to upper 80s, approximately 87 degrees that night" and states he "was kept in these conditions for approximately 7 minutes." (Id.)

5

On July 7, 2024, Halifax County magistrate judge Christopher Kidd found probable cause to charge plaintiff with the misdemeanor offenses of disorderly conduct in violation of N.C. Gen. Stat. § 14-288.4, and resisting a public officer in violation of N.C. Gen. Stat. § 14-223. See ((DE 41-1), pp. 4-5). The charging text for the disorderly conduct charge provided as follows:

> [T]he defendant unlawfully and willfully did intentionally cause a public disturbance at THE CORNER OF CHESTNUT ST AND HWY 158, by making utterances, making gestures, making displays, using abusive language, intended and plainly likely to provoke immediate violent retaliation and thereby cause a breach of peace. The acts of defendant were directed toward CORPORAL N ESTES and consisted of WHAT THE F**K IS THE OFFICER PROBLEM AND THIS IS BULLSH** IN FRONT OF A LARGE CROWD OF PEOPLE.

((DE 41-1), p. 5). The charging text for the resisting a public officer charge provided as follows:

> [D]efendant unlawfully and willfully did resist, delay, and obstruct N ESTES, a public officer holding the office of CORPORAL WITH THE HALIFAX COUNTY SHERIFFS OFFICE, by SNATCHING AWAY AND REFUSING TO BE HANDCUFFED. At the time, the officer was discharging and attempting to discharge an official duty by RESPONDING TO A CALL ASSISTING THE WELDON PD WITH A LARGE GATHERING OF PEOPLE CAUSING A DISTURBANCE AND ARRESTING THE DEFENDANT FOR DISORDERLY CONDUCT.

(Id.)

On July 9, 2024, plaintiff went to the emergency department at Eastern Carolina University Health with complaints of "knee pain" and "generalized body aches." (Id. p. 6). The treating physician prescribed plaintiff Naproxen (a nonsteroidal anti-inflammatory drug) and Tizanidine (a muscle relaxant). (Id.; (DE 49) ¶11).

A court date in connection with plaintiff's criminal misdemeanor charges was set for November 13, 2024, in the Halifax County District Court. ((DE 41-1) pp. 12-13). Plaintiff appeared at the hearing, but defendant Estes did not. (Id.) The court dismissed both of plaintiff's

6

criminal charges due to defendant Estes' failure to appear and noted Estes was "in training" and "failed to notify office of training." (Id.)

## DISCUSSION

A.    Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

When deciding cross-motions for summary judgment, a court considers each motion separately and resolves all factual disputes and competing inferences in the light most favorable to the opposing party. Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003). The court must ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

B.    Analysis

Defendants raise the affirmative defense of qualified immunity. Qualified immunity shields government officials from liability for statutory or constitutional violations so long as they can reasonably believe that their conduct does not violate clearly established law. Harlow v.

7

Fitzgerald, 457 U.S. 800, 818 (1982). A court employs a two-step procedure for determining whether qualified immunity applies "that asks first whether a constitutional violation occurred and second whether the right violated was clearly established." Melgar v. Greene, 593 F.3d 348, 353 (4th Cir. 2010). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009). When a court's decision on one step is dispositive, it need not reach the other. See Raub v. Campbell, 785 F.3d 876, 881 (4th Cir. 2015).

Where qualified immunity has been raised, viewing the facts and drawing the reasonable inferences in the light most favorable to the plaintiff generally means adopting the plaintiff's version of the facts. Scott v. Harris, 550 U.S. 372, 377-78 (2007); see also Iko v. Shreve, 535 F.3d 225, 230 (4th Cir. 2008). A court "do[es] not make credibility determinations in resolving the first prong of the [qualified immunity] analysis." Wilson v. Prince George's Cty., Maryland, 893 F.3d 213, 220 (4th Cir. 2018). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott, 550 U.S. at 380.

1. Unlawful Arrest

Plaintiff alleges defendant Estes violated the Fourth Amendment because he did not have probable cause to arrest plaintiff for disorderly conduct or resisting a public officer on July 7, 2024. "[T]he general rule [is] that Fourth Amendment seizures are reasonable only if based on probable cause to believe that the individual has committed a crime." Bailey v. United States, 568 U.S. 186,

8

192 (2013) (internal quotation omitted). Probable cause exists when the "facts and circumstances within the officer's knowledge [] are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." United States v. Gray, 137 F.3d 765, 769 (4th Cir. 1998) (quotation and citation omitted). The Fourth Circuit Court of Appeals has provided as follows:

> As this court has explained, "[p]robable cause is determined by a 'totality-of-the circumstances' approach." Smith v. Munday, 848 F.3d 248, 253 (4th Cir. 2017) (quoting Illinois v. Gates, 462 U.S. 213, 230, 103 S. Ct. 2317, 76 L.Ed.2d 527 (1983)). "While probable cause requires more than bare suspicion, it requires less than that evidence necessary to convict." Id. (quoting United States v. Gray, 137 F.3d 765, 769 (4th Cir. 1998)). "It is an objective standard of probability that reasonable and prudent persons apply in everyday life." Id. (quoting Gray, 137 F.3d at 769). In making this inquiry, we consider only the information the officers had at the time of the arrest. See id.; Graham v. Gagnon, 831 F.3d 176, 184 (4th Cir. 2016). Additionally, "we do not examine the subjective beliefs of the arresting officers to determine whether they thought that the facts constituted probable cause." Munday, 848 F.3d at 253 (quoting Graham, 831 F.3d at 185).

Gilliam v. Sealey, 932 F.3d 216, 234 (4th Cir. 2019).

Beginning with plaintiff's disorderly conduct charge, N.C. Gen. Stat. § 14–288.4 provides that "[d]isorderly conduct is a public disturbance intentionally caused by any person who . . . [m]akes or uses any utterance, gesture, display or abusive language which is intended and plainly likely to provoke violent retaliation and thereby cause a breach of the peace." N.C. Gen. Stat. §14–288.4(a)(2). Public disturbance is defined as:

> Any annoying, disturbing, or alarming act or condition exceeding the bounds of social toleration normal for the time and place in question which occurs in a public place or which occurs in, affects persons in, or is likely to affect persons in a place to which the public or a substantial group has access. The places covered by this definition shall include, but not be limited to, highways, transport

9

facilities, schools, prisons, apartment houses, places of business or amusement, or any neighborhood.

N.C. Gen. Stat. § 14-288.1(8).

Here, plaintiff asserts defendant Estes arrested him in retaliation for plaintiff's use of profanity and criticism of the officers, which was speech protected by the First Amendment. The Fourth Circuit Court of Appeals has held:

> A plaintiff must plead "the absence of probable cause" . . . in retaliatory prosecution and arrest cases. *Hartman v. Moore*, 547 U.S. 250, 263, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006); *Nieves v. Bartlett*, 587 U.S. 391, 404, 139 S.Ct. 1715, 204 L.Ed.2d 1 (2019). That's because the absence of probable cause is a powerful indication that a government official acted with retaliatory intent. *See Nieves*, 587 U.S. at 402, 139 S.Ct. 1715. Conversely, probable cause makes it nearly impossible to show that animus caused the adverse action. *Hartman*, 547 U.S. at 260–61, 126 S.Ct. 1695.
>
> There's an exception to this rule when "a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 587 U.S. at 407, 139 S.Ct. 1715. In those cases, "probable cause does little to prove or disprove the causal connection between animus and injury." *Id.*

Stanley v. Bocock, 160 F.4th 573, 577 (4th Cir. Dec. 2, 2025).

In the instant action, when the officers encountered plaintiff, he was agitated, yelled profane and abusive language directly at the officers, and refused to comply with the officers' repeated commands to calm down. Plaintiff's actions created a public disturbance in the neighborhood surrounding Chestnut Street and West Third Street, and impeded the officers' ability to respond to an emergency call for assistance with crowd control at a nearby block party. Plaintiff's conduct under these circumstances, which was specifically directed at defendant Estes and the other officers on the scene, provided sufficient probable cause to arrest plaintiff for

10

disorderly conduct.  See Nieves v. Bartlett, 587 U.S. 391, 408 (2019); Somers v. Devine, 132 F.4th 689, 697-98 (4th Cir. 2025); Wisniewski v. Stevens, No. 96-1272, 1997 WL 173227, at *3 (4th Cir. 1997) ("Wisniewski's use of profanity was just one factor in his arrest."); Laba v. Copeland, No. 3:15-CV-00316-FJC-DSC, 2016 WL 5958241, at *5 (W.D.N.C. Oct. 13, 2016); see also, Chaplinsky v. New Hampshire, 315 U.S. 568, 571-72 (1942) (stating the First Amendment does not protect "fighting words" which are words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace."); Matter of A.R.V., No. COA18-584, 2019 WL 2185498, at *3 (N.C. App. May 21, 2019) ("Because directing profane language at a police officer in a boisterous manner and resisting a police officer's commands supports an inference that such language and conduct was intended to and could likely provoke retaliation by an average person, the trial court did not err when it denied Alex's motion to dismiss for insufficient evidence."); In re J.D.G., No. COA14-117, 2014 WL 4081955, at *3 (N.C. App. Aug. 19, 2014); In re V.C.R., 227 N.C. App. 80, 84, 742 S.E.2d 566, 569 (2013) ("In fact, the North Carolina Court of Appeals has previously upheld convictions for disorderly conduct when abusive language was directed at a police officer.") (citation omitted).

To the extent plaintiff asserts defendant Estes incorrectly stated in the charging text for the disorderly conduct offense that plaintiff created a public disturbance "in front of a large group of people," the court agrees there was no large group of people immediately surrounded plaintiff at the time of his arrest.  However, it is undisputed that there was a large group of people nearby, as well as disturbances in the area to which the officers were actively responding at the time plaintiff was engaged in the conduct at issue.  Plaintiff, additionally, has not produced any evidence to suggest that he was "arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." Nieves, 587 U.S. at 407.  Based upon the foregoing,

11

plaintiff cannot establish a First Amendment violation  See <u>Gardner v. Momon</u>, No. 24-1424, 2025 WL 2206325, at *2 (4th Cir. Aug. 4, 2025); <u>Patton v. Ind. Univ. Bd. of Trustees</u>, No. 1:20-cv-00699-TWP-MJD, 2023 WL 1798735, at *9 (S.D. Ind. Feb. 7, 2023) ("Probable cause generally bars claims for First Amendment retaliatory arrest and prosecution, and absolutely bars claims of Fourth Amendment false arrest"). <u>see</u> <u>also</u>, <u>Reichle v. Howards</u>, 566 U.S. 658, 666-67 (2012). Finally, because defendant Estes had probable cause to arrest plaintiff for disorderly conduct, plaintiff cannot establish a Fourth Amendment malicious prosecution claim.

Even if plaintiff could establish a constitutional violation, the court finds that it was reasonable for a law enforcement officer to believe that arresting an individual who was belligerent, creating a disturbance, refusing to obey instructions to calm down, and disrupting law enforcement officers in their attempt to respond to a nearby crowd of approximately two hundred people and nearby disturbances would not violate the Fourth or First Amendments.  <u>See</u> <u>Nieves</u>, 587 U.S. at 408; <u>Somers</u>, 132 F.4th at 697-98; <u>Hulbert v. Pope</u>, 70 F.4th 726, 738 (4th Cir. 2023) ("Because Pope reasonably could have believed that his orders to Jeff and Kevin Hulbert were lawful, he is also entitled to qualified immunity on their First Amendment retaliatory-arrest and Fourth Amendment unreasonable-seizure claims."); <u>see</u> <u>also</u>, <u>Durham v. Horner</u>, 690 F.3d 183, 189 (4th Cir. 2012) (internal quotation omitted) ("[e]ven if the existence of probable cause were a close question, the qualified immunity standard gives ample room for mistaken judgments."). Thus, plaintiff cannot establish either prong of the qualified immunity test, and defendant Estes is entitled to qualified immunity for these claims.

The court next turns to plaintiff's resisting a public officer charge.  Plaintiff asserts defendant Estes did not have probable cause to arrest him for resisting a public officer.  North Carolina law makes it a misdemeanor offense to "willfully and unlawfully resist, delay or obstruct

a public officer in discharging or attempting to discharge an official duty[.]" N.C. Gen. Stat. § 14-223(a). Here, probable cause existed to arrest plaintiff for violating N.C. Gen. Stat. § 14-223. It is undisputed that plaintiff encountered defendant Estes and the other officers when the officers were actively responding to an emergency call for assistance with crowd control for a nearby block party and related disturbances. As the video depicts, plaintiff repeatedly refused to follow the officers' instructions to calm down and, instead, continued to speak and gesture in a loud and belligerent manner. Failing to follow an officer's commands or instructions or impeding an officer in carrying out his duties constitutes a violation of N.C. Gen. Stat. § 14-223(a). See, e.g., Craddock v. Beaufort Cnty. Sheriff Dep't, No. 4:09-CV-92-D, 2011 WL 4460309, at *8 (E.D.N.C. Sept. 26, 2011), aff'd, 489 F. App'x 712 (4th Cir. 2012). Based upon the foregoing, there is no genuine issue of material fact as to whether probable cause existed to arrest plaintiff for violating N.C. Gen. Stat. § 14-223, and, thus, no Fourth Amendment violation.

Finally, as stated "[e]ven if the existence of probable cause were a close question, the qualified immunity standard gives ample room for mistaken judgments." Durham, 690 F.3d at 189. Based upon the foregoing, plaintiff cannot establish either prong of the qualified immunity test for this claim and defendant Estes is entitled to qualified immunity.

2.     Excessive Force

Plaintiff asserts defendant Estes used excessive force against him during the arrest on July 7, 2024. "The Fourth Amendment prohibits police officers from using excessive force to seize a free citizen."[6] Hupp v. Cook, 931 F.3d 307, 321 (4th Cir. 2019) (quotation marks omitted). "[A]ll

---

[6] Plaintiff also cites the Eighth Amendment. However, "[w]hen a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures." Tolan v. Cotton, 572 U.S. 650, 656 (2014). Thus, the court construes plaintiff's excessive force claim as one pursuant to the Fourth Amendment and not the Eighth Amendment.

13

claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]" Graham v. Connor, 490 U.S. 386, 395 (1989) (emphasis in original). This standard is objective reasonableness. Wilson v. Prince George's Cnty, 893 F.3d 213, 219 (4th Cir. 2018). Under the objective reasonableness standard, "the reasonableness of a particular use of force, deadly or not, must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Byers v. Painter, 173 F.4th 155, 161 (4th Cir. 2026) (internal quotations and citation omitted).

Specific factors to be considered are (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) whether the suspect is actively resisting or attempting to flee. Graham, 490 U.S. at 396. Additional considerations include "the extent of the plaintiff's injury" and "any effort made by the officer to temper or to limit the amount of force" used. Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015); see also, Somers, 132 F.4th at 698. Whether the officer's conduct was reasonable is a question of law to be decided after determining "the relevant set of facts and draw[ing] all inferences in favor of the nonmoving party to the extent supportable by the record." Scott, 550 U.S. at 381 n.8 (emphasis omitted).

Applying the Graham factors to the instant action, the court begins with the severity of the crime. Defendant Estes arrested plaintiff for misdemeanor offenses, which "require officers to moderate the level of force used to effectuate an arrest." Evans v. City of Lynchburg, No. 6:24-CV-00019, 2026 WL 508819, at *6 (W.D. Va. Feb. 24, 2026); see also, Yates v. Terry, 817 F.3d 877, 885 (4th Cir. 2016) ("When the offense committed is a minor one, we have found that the first Graham factor weigh[s] in plaintiff's favor.") (internal quotation omitted); Barfield v.

14

Kershaw County Sheriff's Office, 638 F. App'x 196, 202 (4th Cir. 2016). While this Graham factor may weigh in favor of plaintiff given he was charged with misdemeanor offenses, Estes suffered only minor injuries, which indicates the force used was minimal. Moreover, the interaction between Estes and plaintiff was brief, lasting only a few seconds and any force used ceased when plaintiff complied with the officers' orders.

As for the second Graham factor, the court considers whether plaintiff posed a threat to the safety of the officers or others. Here, plaintiff posed a threat to the safety of both the officers on the scene and others as plaintiff was interfering with the officers' active response to an emergency call for assistance with a nearby crowd which had gotten out of control and was blocking EMS's response to a medical emergency. While the video does not depict a crowd in the immediate vicinity of where plaintiff was arrested, it is undisputed that the officers were in the process of responding to a large-scale disturbance nearby when they encountered plaintiff. In fact, plaintiff admits that he knew about the block party and was aware that emergency vehicles were responding to the area. Despite this knowledge, plaintiff berated the officers for their driving and refused to obey their instructions to calm down. Plaintiff, instead, continued to act in an accusatory and belligerent manner and resisted Estes' efforts to arrest him for such conduct.

Finally, the court considers the third Graham factor, whether plaintiff was attempting to flee. The video evidence establishes that plaintiff repeatedly told the officers to "get out of his face" and pulled away from Estes when Estes attempted to secure plaintiff. In response, Estes used a quick takedown technique to regain control over plaintiff after plaintiff continued to attempt to flee after plaintiff fell to the ground.[7] When plaintiff was brought to his feet, he immediately

---

[7] Notably, this case is distinguishable from the Fourth Circuit's ruling in Hupp v. Cook, 931 F.3d at 307 (4th Cir. 2019), in which the court found that "a reasonable officer could not believe that the initial act of pulling [one's] arm

15

complied with the officers' direction to put his hands behind his back to be restrained. At that point, the incident was over and no further force was used. Significantly, no officer on the scene deployed a taser, or any other weapon, and did not strike, hit, kick, or use a baton on plaintiff during the arrest. Rather, the officers maintained a calm demeanor and used only the force necessary to gain control after plaintiff pulled away. Based on the foregoing, the court finds that the Graham factors weigh in favor of defendant Estes, and that there was no Fourth Amendment violation.

As for the second prong of the qualified immunity test, the constitutional right at issue was not clearly established. As set forth above, there is no evidence of serious physical force being used against plaintiff during his arrest. In 2023, a court in the Western District of North Carolina held that "passively resisting misdemeanor suspects do not have a clearly established Fourth Amendment right not to be taken to the ground during their arrest[.]" Gunn v. Padgett, No. 1:21-CV-166-MOC, 2023 WL 6307956, at *6 (W.D.N.C. Sept. 27, 2023). Accordingly, even if plaintiff could establish a Fourth Amendment violation, the court determines that the right was not clearly established and defendant Estes is entitled to qualified immunity.

The court next turns to plaintiff's contention that his Fourth or Fourteenth Amendment rights were violated when unknown officers placed him in a patrol vehicle and intentionally "cut the vehicle's engine off" and that an unknown officer told him that he should have behaved in response to plaintiff's complaints that he could not breath. As an initial matter, plaintiff does not

---

away when an officer grabs a person without warning or explanation justifies the officer's decision to throw a person to the ground." Id. at 323. In Hupp, the arresting officer grabbed the plaintiff's arm "mere seconds before she approached him" and "before she had the opportunity to hear any order that he may have given for her to move." Id. Whereas, in this action, plaintiff had been yelling at the officers and had refused orders to calm down before defendant Estes attempted to secure plaintiff and plaintiff then continued to attempt to pull away and flee.

16

name the officers involved with the alleged conduct and does not indicate that any of the named defendants were personally involved with these allegations. Because plaintiff does not allege any facts showing the personal involvement of any named defendant, the named defendants are entitled to summary judgment as to any Fourth or Fourteenth Amendment claims arising out of these facts. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); see also, Monell v. New York Dep't of Soc. Serv., 436 U.S. 658, 691 (1978); Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994); Hendrix v. Head, No. 8:24-cv-7056-DCC-WSB, 2024 WL 5486403, at *4 (D.S.C. Dec. 12, 2024), adopting R&R, 2025 WL 920612 (Mar. 26, 2025); Hollis v. Palmer, No. 6:20-cv-04472, 2021 WL 1740295, at *4 (D.S.C. Apr. 5, 2021), adopting R&R, 2021 WL 1739747 (D.S.C. Apr. 30, 2021).

Even if plaintiff had alleged the personal involvement of Estes, Cash, or Davis, he still cannot establish a constitutional violation. By plaintiff's own allegations, he was only subject to the alleged conditions for approximately seven minutes and he does not allege any injury. Further, plaintiff admits that the officers rolled the vehicle's windows down approximately two inches before placing him in the vehicle. While plaintiff estimates that the temperature on the evening of July 7, 2024, was in the mid to upper eighties when he was placed in the patrol car, it was after midnight and the sun was down. These conditions do not rise to the level of a Fourth or Fourteenth Amendment. See Crocker v. Beatty, 995 F.3d 1232, 1248-1253 (11th Cir. 2021); Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir. 2001); Aria v. Amador, 61 F. Supp. 3d 960, 976 (E.D. Cal. 2014); Esmont v. City of New York, 371 F. Supp. 2d 202, 214 (S.D.N.Y. 2005).

3.      Medical Claim

To the extent plaintiff asserts defendant Estes acted with deliberate indifference to his serious medical needs subsequent to his arrest, the claim is governed by the Fourteenth

17

Amendment. See Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988). The Fourth Circuit Court

of Appeals recently held:

> To state such a claim, the complaint must plausibly allege both a serious medical need and deliberate indifference to it. [*Short v. Hartman*, 87 F.4th 593, 611–12 (4th Cir. 2023)]. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). And an officer is "deliberately indifferent" when he intentionally, knowingly, or recklessly acts or fails to act when he knew or should have known about both the detainee's condition and the unjustifiably high risk of harm resulting from his action or inaction.[] *Short*, 87 F.4th at 611– 12 (citing *Farmer v. Brennan*, 511 U.S. 825, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) and *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015)).

Rice v. Adams, 172 F.4th 428, 432 (4th Cir. 2026). Here, plaintiff has not alleged facts sufficient

to establish that he had a serious medical need or that Estes acted with deliberate indifference to

any serious medical need. See id.; see also, Iqbal, 556 U.S. at 678-79. Thus, defendants' motion

for summary judgment is granted and plaintiff's motion for summary judgment is denied.

4.      Failure to Intervene

Plaintiff asserts defendants Cash failed to intervene during the alleged unlawful arrest and

subsequent events. As stated, plaintiff has not established that defendant Estes violated his

constitutional rights. Without the underlying constitutional violation, bystander liability fails. See

Hinkle v. City of Clarksburg, 81 F.3d 416, 420 (4th Cir. 1996); see also, Conway v. Jeffry, No.

MJM-25-1826, 2026 WL 974341, at *13 (D. Md. Apr. 10, 2026); Dodson v. Prince George's

Cnty., No. JKS 13-2916, 2016 WL 67255, at *3 (D. Md. Jan. 6, 2016) ("Because the excessive

force claim fails, the failure to intervene claim also fails."). Based upon the foregoing, defendants'

18

motion for summary judgment is GRANTED as to this claim and plaintiff's motion for summary judgment is DENIED.

5. Failure to Train

Plaintiff asserts defendant Davis failed to train defendants Estes and Cash regarding "First Amendment protected speech" and failed to implement a policy which forbids Halifax County Sheriff's Deputies from turning off their vehicle's ignition when a passenger is in the vehicle. ((DE 1), p. 18). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989). To establish a failure to train claim, the plaintiff must prove three elements: "(1) the subordinates actually violated the plaintiff's constitutional or statutory rights; (2) the supervisor failed to train properly the subordinates thus illustrating a 'deliberate indifference' to the rights of the persons with whom the subordinates come into contact; and (3) this failure to train actually caused the subordinates to violate the plaintiff's rights." Gallimore v. Henrico County School Bd., 38 F. Supp. 3d 721, 726 (4ht Cir. 2014); Byers v. City of Richmond, No. 3:23CV801, 2026 WL 1747219, at *6 (E.D. Va. June 17, 2026).

Here, plaintiff has not established that defendants Estes or Cash violated plaintiff's constitutional rights. Plaintiff, additionally, has not produced any evidence to suggest that Davis's alleged failure to train amounted to deliberate indifference. See Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 410 (1997); Edwards v. City of Fayetteville, No. 7:21-CV-103-BO, 2026 WL 1625308, at *5-6 (E.D.N.C. June 5, 2026). Plaintiff additionally has not produced any evidence to suggest a connection between any alleged failure to train and plaintiff's arrest or the alleged use of force. Thus, plaintiff cannot establish that defendant Davis failed to train

19

defendants Estes and Cash prior to the July 7, 2024, incident, and there is no constitutional violation. See Harris, 489 U.S. at 388-89; Doe v. Broderick, 225 F.3d 440, 456 (4th Cir. 2000) ("Only where a failure to train reflects a deliberate or conscious choice . . . a policy as defined by our proper cases—can[a defendant] be liable for such failure under § 1983.").

## CONCLUSION

In summary, plaintiff's motion for summary judgment (DE 38) is DENIED, but defendants' motion for summary judgment (DE 47) is GRANTED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 24/day of June, 2026.

TERRENCE W. BOYLE
United States District Judge